IN THE COURT OF APPEALS OF NORTH CAROLINA

 Nos. COA15-577 and COA15-578

 Filed: 1 December 2015

Sampson County, No. 14 JA 24

IN THE MATTER OF: F.C.D., A Juvenile.

___________________________________________________________________________

Sampson County, No. 14 JA 25

IN THE MATTER OF: M.B., A Juvenile.

 Appeal by respondents from orders entered 11 February 2015 by Judge Sarah

C. Seaton in Sampson County District Court. Heard in the Court of Appeals 9

November 2015.

 Warrick, Bradshaw and Lockamy, P.A., by Frank L. Bradshaw, for petitioner-
 appellee Sampson County Department of Social Services.

 Richard Croutharmel for respondent-appellant R.D.

 Rebekah W. Davis for respondent-appellant M.B.

 Parker Poe Adams & Bernstein LLP, by Kiah T. Ford IV, for guardian ad litem
 for F.C.D.

 Cranfill Sumner & Hartzog LLP, by Jennifer A. Welch, for guardian ad litem
 for M.B.

 DAVIS, Judge.
 IN RE F.C.D.
 IN RE M.B.

 Opinion of the Court

 Respondent R.D. (“Robert”)1 appeals from the trial court’s 11 February 2015

orders in file number 14 JA 24 adjudicating his daughter F.C.D. (“Faye”) to be a

neglected juvenile and ordering that she remain in the legal custody of the Sampson

County Department of Social Services (“DSS”). Respondent M.B. (“Melanie”) appeals

from separate orders entered on 11 February 2015 in file number 14 JA 25

adjudicating her son M.B. (“Michael”) to be an abused and neglected juvenile and

ordering that he remain in the legal custody of DSS and in his current placement

with his maternal grandmother. After careful review, we affirm.

 Factual Background

 In early 2014, Melanie and Michael resided with Robert and Faye at Robert’s

home in Godwin, North Carolina. While both Melanie and Robert maintained that

they were merely friends, Melanie’s friends and coworkers described the relationship

between Melanie and Robert as a dating relationship.

 On 10 March 2014, DSS filed two juvenile petitions alleging that (1) Faye was

a neglected juvenile; and (2) Michael was an abused and neglected juvenile. Both

petitions stated that DSS had received a report of potential abuse and neglect

involving Faye and Michael on 27 February 2014. According to the report, Robert

had told Michael that Michael was “possessed with demons” and had forced Michael

 1 Pseudonyms are used throughout the opinion to protect the identity of the minor children
involved in this matter and for ease of reading. N.C.R. App. P. 3.1(b).

 -2-
 IN RE F.C.D.
 IN RE M.B.

 Opinion of the Court

to (1) sleep outside on a cold night; (2) sit on a chair blindfolded and pray that God

would rid him of the demons; and (3) “baptize” himself by submerging his body in a

bathtub filled with water and repeating “Lord just wash me and cleanse me” seven

times. DSS alleged that the “methods of discipline” that had been inflicted on Michael

in Faye’s presence were “cruel and grossly inappropriate, which created an injurious

environment for [Faye].” DSS obtained nonsecure custody of both juveniles on 7

March 2014. Faye was placed in foster care, and Michael was placed with his

maternal grandmother, “Beth.”

 On 18 September 2014, DSS filed supplemental juvenile petitions concerning

both Faye and Michael. The petitions stated that DSS had received a report that

Michael had also previously been “kicked, tied to a tree, hit with a sock with soap in

it and . . . forced to sleep outside” and that Faye had been “exposed to this behavior.”

Additionally, the petitions noted that a Child and Family Evaluation conducted with

Robert, Melanie, and both children yielded “findings of neglect in the form of injurious

environment regarding [Faye]” and “findings of emotional abuse and neglect

regarding [Michael].”

 The trial court held adjudication and disposition hearings for both Faye and

Michael on 29 October 2014. During the hearings, the trial court also addressed

Melanie’s and Robert’s petitions seeking judicial review of DSS’s determinations that

each was a “responsible individual” as defined by N.C. Gen. Stat. § 7B-101(18a). On

 -3-
 IN RE F.C.D.
 IN RE M.B.

 Opinion of the Court

11 February 2015, the trial court entered orders (1) adjudicating Faye a neglected

juvenile and Michael an abused and neglected juvenile; (2) concluding that Melanie

and Robert were responsible individuals based on its determination that both had

abused and seriously neglected Michael; and (3) directing DSS to place Melanie and

Robert on the Responsible Individuals List pursuant to N.C. Gen. Stat. § 7B-311.

 Melanie and Robert appeal from the trial court’s orders concerning their

respective children. Because the matters involve common issues of fact and law, we

consolidated the cases pursuant to Rule 40 of the North Carolina Rules of Appellate

Procedure.

 Analysis

I. Melanie’s Appeal

 A. Adjudication of Abuse as to Michael

 In her first argument on appeal, Melanie contends that the trial court erred in

adjudicating Michael an abused juvenile. We disagree.

 When reviewing a trial court’s order adjudicating a juvenile abused, neglected,

or dependent, this Court’s duty is “to determine (1) whether the findings of fact are

supported by clear and convincing evidence, and (2) whether the legal conclusions are

supported by the findings of fact.” In re T.H.T., 185 N.C. App. 337, 343, 648 S.E.2d

519, 523 (2007) (citation, quotation marks, and brackets omitted), aff’d as modified,

362 N.C. 446, 665 S.E.2d 54 (2008). If supported by competent evidence, the trial

 -4-
 IN RE F.C.D.
 IN RE M.B.

 Opinion of the Court

court’s findings are binding on appeal even if the evidence would also support

contrary findings. In re A.R., 227 N.C. App. 518, 519-20, 742 S.E.2d 629, 631 (2013).

Its conclusions of law, however, are reviewed de novo. In re H.H., ___ N.C. App. ___,

___, 767 S.E.2d 347, 349 (2014).

 The Juvenile Code defines an abused juvenile as one whose parent, guardian,

custodian, or caretaker “[c]reates or allows to be created a substantial risk of serious

physical injury to the juvenile by other than accidental means; . . . [u]ses or allows to

be used upon the juvenile cruel or grossly inappropriate procedures or cruel or grossly

inappropriate devices to modify behavior; . . . [or c]reates or allows to be created

serious emotional damage to the juvenile.” N.C. Gen. Stat. § 7B-101(1) (2013).

 Here, the trial court made the following pertinent findings of fact in support of

its conclusion that Michael was an abused juvenile:

 13. That since 2012, [Melanie’s] personality has changed
 and she has referred to [Robert] as a “prophet” and a
 “healer” and stated [Robert] could cast demons out of
 people and that the Federal Bureau of Investigation and
 the Central Intelligence Agency were looking for them.

 14. That [Melanie] has informed co-workers of her belief
 that [Michael] is possessed with demons and that when she
 looked at him on occasion his face would “change” and that
 it would no longer look like her son.

 15. That [Melanie] noticed [Michael] doing a “dance” and
 she researched the dance on the Internet herself and
 determined that it was a demonic dance.

 16. That [Melanie] has made statements that she would

 -5-
 IN RE F.C.D.
 IN RE M.B.

 Opinion of the Court

give [Michael] up to God.

17. That [Melanie] has shown additional signs of
confusion and paranoia and told her mother that her
mother’s property had been taken from someone else and
also reported to her mother than [Melanie’s] feet were
“sticking to the floor,” resulting in [Melanie] fleeing the
home.

18. That while residing at the home of [Robert] with
[Melanie] . . . [Michael] was forced to sleep at least two
nights outside and this occurred in the month of February,
2014, during a very cold period of time.

....

20. That [Robert] ordered [Michael] to go walk in the
woods and pray and gave the instructions while holding a
firearm, causing [Michael] distress.

21. That [Robert] and [Melanie] have, on numerous
occasions, accused [Michael] of having demons inside of
him and also told him demons were swirling around over
his head.

22. That based upon the accusations and repeated
statements of [Robert] and [Melanie,] [Michael] began to
believe he had a demon inside of him.

23. That [Michael] likes to dance and on at least one
occasion he was dancing and [Robert] and [Melanie]
accused him of doing a demonic dance.

24. That [Michael] has been blindfolded and instructed to
baptize himself by going under water in a bathtub seven
times and while under saying “save me” seven times.

25. That [Michael] was also forced to sit on a stool and put
his foot on a rock.

 -6-
 IN RE F.C.D.
 IN RE M.B.

 Opinion of the Court

 26. That [Melanie] has struck [Michael] with a belt
 repeatedly and [Michael] attempted to dodge the belt but
 [Melanie] would keep attempting to strike him resulting in
 [Michael] being hit all over his body, including his head.

 27. That [Melanie] and [Robert] have tied [Michael] to a
 tree using duct tape.

 Because Melanie has not challenged findings 13, 18, 20, 24, 25 or 26, they are

binding on appeal. See Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731

(1991) (“Where no exception is taken to a finding of fact by the trial court, the finding

is presumed to be supported by competent evidence and is binding on appeal.”).

Melanie does, however, challenge the trial court’s findings of fact 14, 15, 16, 17, 21,

22, 23, and 27 as not supported by evidence, and we proceed to address each in turn.

 With regard to finding of fact 14, Melanie “excepts to this finding to the extent

that it implies that there were multiple conversations over a period of time during

which the mother was convincing Michael and others that Michael was possessed.”

We do not read finding 14 as suggesting that Melanie continually and repeatedly

engaged in conversations with her colleagues about her belief that her son was

“possessed.” Rather, we read the finding as signifying precisely what it states — that

Melanie informed several co-workers that her son was possessed by demons. This

finding is supported by competent evidence as two of Melanie’s co-workers testified

that Melanie had told each of them that Michael “has demons,” his facial features

would change at times, and that he suffered from “demonic possession.”

 -7-
 IN RE F.C.D.
 IN RE M.B.

 Opinion of the Court

 In findings 15 and 23, the trial court described an incident where Melanie

concluded that her son’s dancing was a “demonic dance.” In her brief, she asserts

that the testimony at trial showed that Michael’s dance “did not seem to be an issue”

with her. However, the evidence of record shows that Melanie — while visibly upset

— told one of her coworkers that her son had performed “a dance move, and it was

Googled on the Internet and it was some type of demonic move.” Michael likewise

testified that he had been accused of performing a demonic dance when he had

showed Melanie and Robert a “pop robotic” dance move to dubstep music. Thus, the

trial court’s findings that Melanie had determined that Michael’s dance move was a

demonic dance based on her Internet search and that Robert and Melanie had

accused Michael of performing a demonic dance are supported by the evidence.

 Melanie next argues that findings 16 and 17 — which refer to instances

described by her mother Beth where Melanie displayed unusual behavior — are not

indicative of Melanie suffering from paranoia or confusion and instead merely

indicate the contentious relationship between the two women. However, Beth’s

testimony regarding her daughter’s behavior supports the trial court’s findings

concerning these incidents, and it was the trial court’s duty to determine what

inferences should be drawn from that testimony. See In re Whisnant, 71 N.C. App.

439, 441, 322 S.E.2d 434, 435 (1984) (explaining that trial judge has responsibility to

“weigh and consider all competent evidence, and pass upon the credibility of the

 -8-
 IN RE F.C.D.
 IN RE M.B.

 Opinion of the Court

witnesses, the weight to be given their testimony and the reasonable inferences to be

drawn therefrom”). Moreover, two other witnesses, one being a licensed psychologist,

described Melanie as paranoid.

 Findings 21, 22, and 27 describe both Robert and Melanie accusing Michael of

being possessed by demons and tying him to a tree. Melanie argues that these

findings are inaccurate because “[Robert] did all of these things, not [her].” An

examination of the record, however, reveals that Melanie told her son and other

people that he was possessed by demons and that Michael had started to believe he

was, in fact, “possessed” based on Robert’s and Melanie’s statements and actions

towards him, which included their act of tying him to a tree with duct tape. Thus,

these findings are also supported by the evidence and are binding on appeal. See

A.R., 227 N.C. App. at 519-20, 742 S.E.2d at 631.

 As we have determined that each of the challenged findings was supported by

competent evidence, we now turn to whether these findings supported the trial court’s

conclusion that Michael was an abused juvenile. As discussed above, a child is an

abused juvenile if his parent, guardian, custodian, or caretaker “[u]ses or allows to be

used upon [him] cruel or grossly inappropriate procedures or cruel or grossly

inappropriate devices to modify behavior.” N.C. Gen. Stat. § 7B-101(1)(c).

 Recently, in H.H., our Court observed that a “review of the case law reveal[ed]

only three cases, all unpublished and thus lacking precedential value, in which this

 -9-
 IN RE F.C.D.
 IN RE M.B.

 Opinion of the Court

Court has considered what actions constitute ‘cruel or grossly inappropriate

procedures or cruel or grossly inappropriate devices to modify behavior.’” H.H., ___

N.C. App. at ___, 767 S.E.2d at 350. We noted that two of these three cases involved

extreme examples of discipline. In the first case, a child was choked, threatened with

eating dog feces, and had a firearm pointed at him. Id. at ___, 767 S.E.2d at 350. In

the second case, the juvenile was forced to stand in a “T-Shape” for up to five minutes

with duct tape over his mouth while being struck with “a belt, paddle, switch, or other

object.” Id. at ___, 767 S.E.2d at 350. The third case involved allegations of abuse

stemming from an incident where the child had been hit in the face and then kicked

in the stomach by her mother. Id. at ___, 767 S.E.2d at 350. We concluded that the

circumstances existing in H.H. — where the trial court found that the child had been

struck “five times with a belt, leaving multiple bruises on the inside and outside of

his legs which were still visible the following afternoon” — were sufficient to warrant

a finding of abuse. Id. at ___, 767 S.E.2d at 350.

 Here, the trial court’s findings establish that Michael was (1) forced to sleep

outside on at least two cold nights during the month of February; (2) bound to a tree;

(3) required to participate in a “self-baptism” in a bathtub full of water; (4) ordered

by Robert to pray while Robert was brandishing a firearm; (5) struck with a belt “all

over his body”; and (6) repeatedly told by Robert and Melanie that he was possessed

by demons to the point that he himself began to believe it to be true. We hold that

 - 10 -
 IN RE F.C.D.
 IN RE M.B.

 Opinion of the Court

the trial court’s findings concerning these incidents — all of which are supported by

evidence of record — demonstrate that Michael was an abused juvenile in that he

was subjected to cruel or grossly inappropriate procedures or devices to modify

behavior.

 Melanie argues that the factual findings made by the trial court were taken

out of context in that the court described the incidents “as if Michael had not

[previously] exhibited behavioral and mental health issues which prompted some of

the actions.” We reject this contention. First, Melanie cites no legal authority in

support of her argument on this point. See N.C.R. App. P. 28(b)(6) (“Issues not

presented in a party’s brief, or in support of which no reason or argument is stated,

will be taken as abandoned.”). Second, we are unpersuaded by the implication of her

argument, which is that Michael’s preexisting behavioral problems rendered the

“discipline” inflicted upon him appropriate. The definition of abuse in this subsection

of the statute focuses on the severity and brutality of the procedures and devices

employed by the parent or caretaker against the juvenile rather than the juvenile’s

behavior that those procedures and devices were designed to correct. See N.C. Gen.

Stat. § 7B-101(1)(c).

 Thus, the trial court did not err in concluding that Michael was subjected to

cruel or grossly inappropriate procedures or devices such that he was an abused

juvenile as defined by N.C. Gen. Stat. § 7B-101(1). Because this ground standing

 - 11 -
 IN RE F.C.D.
 IN RE M.B.

 Opinion of the Court

alone is sufficient to support the adjudication of abuse, we need not address the trial

court’s two other grounds for adjudicating Michael an abused juvenile.

 B. Placement on the Responsible Individuals List

 A “responsible individual” is statutorily defined as “[a] parent, guardian,

custodian, or caretaker who abuses or seriously neglects a juvenile.” N.C. Gen. Stat.

§ 7B-101(18a). The Department of Health and Human Services maintains a registry

of responsible individuals and “may provide information from this list to child caring

institutions, child placing agencies, group home facilities, and other providers of

foster care, child care, or adoption services that need to determine the fitness of

individuals to care for and adopt children.” N.C. Gen. Stat. § 7B-311(b) (2013). An

individual may be placed on this list — known as the Responsible Individuals List

(“RIL”) — if (1) the individual is given notice pursuant to N.C. Gen. Stat. § 7B-320

that he or she has been identified as a responsible individual by a director of a county

department of social services in conjunction with an investigative assessment of

abuse or serious neglect; and (2) “[t]he court determines that the individual is a

responsible individual as a result of a hearing on the individual’s petition for judicial

review.” Id. At such a hearing, “the director shall have the burden of proving by a

preponderance of the evidence the abuse or serious neglect and the identification of

the individual seeking judicial review as a responsible individual.” N.C. Gen. Stat. §

7B-323(b) (2013).

 - 12 -
 IN RE F.C.D.
 IN RE M.B.

 Opinion of the Court

 Melanie contends that the trial court’s placement of her name on the RIL

constituted error because (1) the hearing in the trial court failed to safeguard her

right to due process of law; and (2) the evidence did not support a conclusion that she

abused or seriously neglected Michael. Melanie asserts that because the RIL hearing

was “conflated with the adjudication,” she was deprived of her right to present sworn

evidence, represent herself or obtain the services of an attorney at her own expense,

and cross-examine witnesses and make a closing argument as provided for in N.C.

Gen. Stat. § 7B-323(c). We disagree.

 The issue of whether Michael was an abused and neglected juvenile and the

issue of whether Melanie was a responsible individual were heard together.

Melanie’s attorney represented her on both matters by presenting evidence, cross-

examining witnesses, and making arguments to the court. Indeed, the transcript

reveals that during closing arguments Melanie’s counsel expressly argued that

Melanie’s placement on the RIL would be improper. Moreover, Melanie never

asserted during the proceedings that she wished to represent herself on the RIL issue.

Thus, we conclude that Melanie was not deprived of the rights guaranteed by N.C.

Gen. Stat. § 7B-323(c).

 We are also satisfied that the trial court’s conclusion that Melanie should be

placed on the RIL is supported by its findings, which, in turn, are supported by

competent evidence. As discussed in detail above, the evidence at trial demonstrated

 - 13 -
 IN RE F.C.D.
 IN RE M.B.

 Opinion of the Court

that Melanie “used or allowed to be used upon [Michael] cruel or grossly

inappropriate devices or procedures to modify behavior” such that Michael was an

abused juvenile. Thus, Melanie is a parent “who abuse[d] . . . a juvenile,” and the

trial court therefore did not err in ordering that her name be placed on the RIL. N.C.

Gen. Stat. § 7B-101(18a) (defining responsible individual as “[a] parent, guardian,

custodian, or caretaker who abuses or seriously neglects a juvenile”).

II. Robert’s Appeal

 On 20 March 2015, Robert gave notice of appeal from the trial court’s 11

February 2015 orders adjudicating Faye to be a neglected juvenile and ordering that

she remain in the legal custody of DSS. However, this notice of appeal was untimely.

On 15 June 2015, Robert filed a petition for writ of certiorari with this Court seeking

our review of the merits of his appeal despite the fact that the notice of appeal was

filed beyond the applicable deadline. On 29 June 2015, Faye’s guardian ad litem filed

a motion to dismiss Robert’s appeal based on his untimely notice of appeal.

 It is well established that this Court may, in its discretion, issue a writ of

certiorari “when the right to prosecute an appeal has been lost by failure to take

timely action.” N.C.R. App. P. 21(a)(1). We agree that Robert’s appeal must be

dismissed as untimely, but, in our discretion, we grant his petition for writ of

certiorari for the purpose of considering the merits of his arguments.

 - 14 -
 IN RE F.C.D.
 IN RE M.B.

 Opinion of the Court

 Robert’s sole contention on appeal is that the trial court erred by adjudicating

Faye a neglected juvenile. We disagree.

 A neglected juvenile is defined in N.C. Gen. Stat. § 7B-101(15) as

 [a] juvenile who does not receive proper care, supervision,
 or discipline from the juvenile's parent, guardian,
 custodian, or caretaker; or who has been abandoned; or
 who is not provided necessary medical care; or who is not
 provided necessary remedial care; or who lives in an
 environment injurious to the juvenile’s welfare; or who has
 been placed for care or adoption in violation of law. In
 determining whether a juvenile is a neglected juvenile, it is
 relevant whether that juvenile . . . lives in a home where
 another juvenile has been subjected to abuse or neglect by
 an adult who regularly lives in the home.

N.C. Gen. Stat. § 7B-101(15) (emphasis added).

 Our Court has previously explained that this definition of neglect affords “the

trial court some discretion in determining whether children are at risk for a

particular kind of harm given their age and the environment in which they reside.”

In re McLean, 135 N.C. App. 387, 395, 521 S.E.2d 121, 126 (1999). A child may be

adjudicated a neglected juvenile if the injurious environment or the parent’s failure

to provide proper care causes the juvenile some physical, mental, or emotional

impairment or creates “a substantial risk of such impairment.” In re Safriet, 112 N.C.

App. 747, 752, 436 S.E.2d 898, 901-02 (1993).

 Here, the trial court made the following pertinent findings of fact in support of

its determination that Faye was neglected:

 - 15 -
 IN RE F.C.D.
 IN RE M.B.

 Opinion of the Court

 17. That while residing at the home of [Robert] and
 [Faye], [Michael] was forced to sleep at least two nights
 outside and this occurred in the month of February, 2014,
 during a very cold period of time.

 ....

 19. That [Robert] ordered [Michael] to go walk in the
 woods and pray and gave the instructions while holding a
 firearm, causing [Michael] distress.

 20. That [Robert] and [Melanie] have, on numerous
 occasions, accused [Michael] of having demons inside of
 him and also told him demons were swirling around over
 his head.

 21. That based upon the accusations and repeated
 statements of [Robert] and [Melanie,] [Michael] began to
 believe he had a demon inside of him.

 22. That [Michael] has been blindfolded and instructed to
 baptize himself by going under water in a bathtub seven
 times and while under saying “save me” seven times.

 23. That [Robert] and [Melanie] have tied [Michael] to a
 tree using duct tape.

 24. That [Faye] has been exposed to the abuse and neglect
 of [Michael] despite the fact [Faye] herself has not been
 physically harmed by [Robert] or [Melanie].

 Based on these findings, the trial court concluded as a matter of law that Faye

lived in an environment injurious to her welfare and was therefore a neglected

juvenile.

 - 16 -
 IN RE F.C.D.
 IN RE M.B.

 Opinion of the Court

 Robert argues that the trial court’s conclusion of neglect is unsupported

because the abuse of Michael does not demonstrate that Faye was at risk of physical,

mental, or emotional impairment. This argument is meritless.

 First, the record contains ample evidence that Faye witnessed and was exposed

to Michael’s abuse and neglect. Michael testified that Faye was either physically

present for or at least aware of: (1) Robert conducting an “exorcism” to rid Michael

of his demons; (2) Michael being blindfolded and “baptized” in the bathtub; and (3)

Robert making Michael “do facial expressions,” which led to Robert concluding that

Michael was possessed by demons and forcing him to sleep outside in the cold while

wearing only pajama pants, flip-flops, and a sleeveless t-shirt.

 Admittedly, the trial court failed to make an express finding that Faye was at

risk of impairment based on her exposure to Michael’s abuse. However, in cases

“[w]here there is no finding that the juvenile has been impaired or is at substantial

risk of impairment, there is no error if all the evidence supports such a finding.” In

re Padgett, 156 N.C. App. 644, 648, 577 S.E.2d 337, 340 (2003). Moreover, this Court

has held that the exposure of a child to the “infliction of injury by a parent to another

child or parent, can be conduct causing or potentially causing injury” to that child. In

re W.V., 204 N.C. App. 290, 294, 693 S.E.2d 383, 386 (2010).

 In the present case, Kristy Matala, a licensed psychologist who had conducted

the child family evaluations for both Faye and Michael, testified that Faye’s exposure

 - 17 -
 IN RE F.C.D.
 IN RE M.B.

 Opinion of the Court

to Michael’s neglect and abuse “would be distressing for her” and “could cause her

fear and worry about something like that happening to her.” She further expressed

her opinion that exposing a child to the “paranoid ideation” displayed by Robert and

Melanie would cause that child “to feel unnecessary fear” and categorized such

behavior as “emotional abuse.”

 Because of the clear evidence demonstrating that Faye lived in an injurious

environment and faced a substantial risk of physical, mental, or emotional

impairment, the trial court’s adjudication of Faye as a neglected juvenile did not

constitute error. Accordingly, we affirm the trial court’s adjudication and disposition

orders concerning Faye.

 Conclusions

 For the reasons stated above, we affirm the trial court’s orders in file numbers

14 JA 24 and 14 JA 25.

 AFFIRMED.

 Judges CALABRIA and STROUD concur.

 - 18 -