McGEE, Chief Judge.
Respondent-Father ("Respondent") appeals from orders terminating his parental rights as to the juveniles S.H-K.J.L. ("Sam") and W.L.L. ("Wendy")[1] , together ("the children"). We affirm.
The Columbus County Department of Social Services ("DSS") filed petitions on 18 November 2015 alleging that Sam and Wendy were neglected and dependent juveniles. DSS stated it had received a referral on 2 September 2015 in reference to Sam testing positive for marijuana at his birth. DSS subsequently received additional referrals on 18 September and 6 October 2015. On 18 September 2015, the mother of Sam and Wendy contacted a DSS social worker and informed her that she and Respondent had been involved in a physical altercation. Mother claimed she and Respondent fought and "he almost broke her arm and in the process she pulled out a knife on him." The social worker informed mother she would have to find a placement for the juveniles that was free of family violence. Sam and Wendy were then placed with a family friend, B.R.
DSS conducted a case management meeting with mother on 6 October 2015. At that meeting, mother reported that she had called the police on 3 October 2015 after Respondent and his sister "stood in the middle of the road across from [B.R.'s] home and pulled out a gun on her and her family." Mother further claimed Respondent chased her, but failed to catch her because he fell. Mother also reported that, later the same evening, Respondent went to B.R.'s home, kicked in the door, and punched a man in the face. Mother stated she was afraid of Respondent and what he might do to her if he found her alone.
DSS alleged mother had not been following through with recommended substance abuse treatment and had failed to be compliant with mental health treatment providers. DSS stated Respondent was uncooperative and unwilling to enter into a case plan. DSS further claimed that, during phone contacts, Respondent cursed at social workers and threatened that if he was not going to be allowed contact with his children, "then they should take care of them and he would make more." DSS alleged mother had filed for two domestic violence protective orders, but had missed one court date resulting in one dismissal, and was threatening to not appear at court a second time in order to have the second order dismissed. Accordingly, due to DSS's stated concern for the safety of the children, DSS obtained non-secure custody of them.
The trial court adjudicated Sam and Wendy as neglected juveniles on 8 March 2016. The allegation of dependency was dismissed. The trial court ordered that custody remain with DSS, and further ordered Respondent and mother not to have contact with each other until both completed a domestic violence course and demonstrated they understood the influence domestic violence had on the children. Respondent was additionally ordered to submit to a mental health assessment and follow all recommendations, including anger management and counseling. The trial court declined to grant Respondent visitation.
The trial court entered a review order on 24 June 2016 in which it found Respondent had not completed domestic violence counseling nor had he submitted to a mental health evaluation. Additionally, Respondent and mother continued to have contact with each other despite the trial court's dispositional order. In a review order entered 20 September 2016, the trial court again found Respondent had not been compliant with its dispositional order concerning family violence counseling and submitting to a mental health evaluation. Additionally, the trial court found mother had called a DSS social worker and informed her of contact with Respondent in violation of the court's order. Furthermore, mother suffered a broken hand as a result of a dispute with Respondent over a cell phone.
The trial court held a permanency planning review hearing on 4 October 2016. In an order entered 10 November 2016, the trial court found Respondent had little contact with DSS and still had not attended family violence counseling or submitted to a mental health evaluation. The trial court further found Respondent was not actively participating in a case plan or cooperating with DSS. Accordingly, the trial court ceased reunification efforts and set a primary permanent plan of adoption with a secondary plan of guardianship.
DSS filed petitions on 27 April 2017 alleging grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2), (3), and (7) (2017) to terminate the parental rights of Respondent and mother. The trial court entered an order on 1 May 2018 in which it determined grounds existed to terminate the parental rights of Respondent and mother pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2), and (3). The trial court dismissed the allegation of abandonment. On the same day, the trial court entered a separate dispositional order in which it concluded it was in the children's best interests that the parental rights of Respondent and mother be terminated. Accordingly, the trial court terminated their parental rights. Respondent filed timely notice of appeal from the trial court's orders.[2]
We initially note Respondent's first argument on appeal is that the trial court lacked subject matter jurisdiction to terminate his parental rights as to Wendy. Respondent claimed DSS did not file a petition to terminate his parental rights as to Wendy; thus, the trial court's termination order was void. In response, DSS filed a motion to dismiss the appeal in which it claimed: (1) a petition to terminate Respondent's parental rights as to Wendy was filed; and (2) Respondent failed to include a copy of the petition in the record on appeal. Thus, DSS argued the appeal as to Wendy should be dismissed due to Respondent's failure to include a necessary part of the record on appeal. Respondent subsequently filed a motion to amend the record on appeal to include the petition to terminate his parental rights as to Wendy, and to amend his brief to withdraw his first argument on appeal. In our discretion, we allow Respondent's motion to amend and to withdraw his first argument, and deny DSS's motion to dismiss.
Respondent next argues the trial court erred by concluding that grounds existed to terminate his parental rights. We disagree.
N.C. Gen. Stat. § 7B-1111 sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support termination. In re Taylor , 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." In re D.J.D. , 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005). We review the trial court's conclusions of law de novo . In re S.N. , 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008).
The trial court found that grounds existed to terminate Respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). To terminate a parent's rights under N.C. Gen. Stat. § 7B-1111(a)(2), the trial court must perform a two-part analysis. The trial court must determine by clear, cogent and convincing evidence that: (1) a child has been willfully left by the parent in foster care or placement outside the home for over twelve months; and (2) the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child. In re O.C. , 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396, disc. review denied , 360 N.C. 64, 623 S.E.2d 587 (2005).
In this case, in support of its conclusion that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) to terminate Respondent's parental rights, the trial court made the following findings of fact:
20. That the juveniles were adjudicated neglected on February 2, 2016.
21. That this [c]ourt's Disposition Order dated February 2, 2016, directed respondent parents to have no contact of any kind with each other until both had completed domestic violence courses and displayed to this [c]ourt's satisfaction that they fully understood the influence domestic violence has on their children.
22. That respondent parents have violated this [c]ourt's Disposition Order dated February 2, 2016, in that they continue to have contact with each other without having completed domestic violence courses and displaying to this [c]ourt's satisfaction that they understand the influence domestic violence has on their children.
23. That this [c]ourt's Disposition Order dated February 2, 2016, also directed the following:
a. Respondent [ ] shall submit to a mental health assessment and conform to any recommendations, including anger management and counseling;
b. Respondent [ ] shall attend and complete a domestic violence course and demonstrate that he understands the problem between himself and [the] mother;
....
25. That [R]espondent [ ] never completed any of his case plan objectives until after the filing of the termination of parental rights petitions.
26. That [Respondent and mother] have not completed their case plans by September 7, 2017.
....
28. That there are no known physical, mental or legal disabilities preventing [R]espondent ... from ... attending to [his] case plans.
....
42. That the matters to which [Respondent and mother] failed to attend were not because of poverty.
We are bound by those findings not challenged by Respondent on appeal. See Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (unchallenged findings are deemed supported by competent evidence and are binding on appeal). Moreover, we review only those findings necessary to support the trial court's conclusion that grounds existed to terminate Respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). See In re T.M. , 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006) (erroneous findings that are unnecessary to support adjudication of neglect do not constitute reversible error).
Respondent first challenges several of the trial court's findings of fact as being unsupported by the evidence. We address each finding in turn.
Respondent first contends that finding of fact 22 is erroneous because it: (1) suggests he did not complete all of the trial court's requirements; and (2) indicates he had ongoing contact with mother. We disagree. At the termination hearing, a DSS social worker testified that, as of September 2017, Respondent had failed to complete his case plan, and Respondent and mother had failed to comply with the court's requirement that they have no contact. Respondent claims that he completed his case plan subsequent to September 2017, but prior to the date of the termination hearing in March 2018. Respondent, however, did not testify at the termination hearing or present any evidence. The basis for Respondent's claim that he completed his case plan appears to be the social worker's response to a leading question from Respondent's counsel during cross-examination. Respondent asked the social worker:
Q. In terms of [Respondent] - so it's your opinion that he did everything he was supposed to do; just it was a little late getting it done?
A. I have been told yes.
It is apparent the social worker's testimony was hearsay and inadmissible unless within an exception to the hearsay rule, and no exception is apparent on the record. See N.C. Gen. Stat. § 8C-1, Rule 801(c) (2017) (Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). Because this was a bench trial and the trial judge was sitting as the finder of fact, the trial court is " 'presumed to have disregarded any incompetent evidence.' " In re J.B. , 172 N.C. App. 1, 16, 616 S.E.2d 264, 273 (2005) (quoting In re Huff , 140 N.C. App. 288, 298, 536 S.E.2d 838, 845 (2000) ). Furthermore, the trial court made no findings regarding the social worker's hearsay testimony, and thus it can be presumed that this incompetent evidence was disregarded. We note that, even if the trial court considered the evidence, it was also free to reject the testimony based on its determination that the evidence lacked credibility. See In re Whisnant , 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) (it is the trial court's duty to "weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom"). Thus, based on the social worker's testimony, we conclude the trial court's finding was supported by competent evidence.
Respondent next contends that findings of fact 25 and 26 are ambiguous and allow multiple interpretations. We are not persuaded. The plain wording of the findings convey Respondent failed to complete any elements of his case plan prior to the filing of the petition to terminate his parental rights, and he still had not completed his case plan as of September 2017.
Respondent also argues finding of fact number 28 is unsupported by the evidence. We disagree. A supervisor from Child Support Enforcement testified Respondent was not under any legal, physical, or mental disability, thus directly supporting the trial court's finding of fact.
Respondent next claims that several elements of his case plan, in particular those requiring him to take domestic violence classes and obtain a mental health assessment, were not related to the conditions for removal as determined by the adjudicatory order. We disagree. There were several issues that led to the removal of the children, including mother's use of drugs while pregnant with both children. However, Respondent's violent acts that immediately preceded the filing of the petition also led to the removal of the children from the home. Additionally, the adjudicatory order specifically found as fact that: (1) Respondent and mother were in a fight in Wendy's presence; and (2) Respondent had committed a violent act in proximity to the children. Thus, in Respondent's case, we conclude the requirements that he enroll in a domestic violence course, obtain anger management counseling, obtain a mental health assessment and follow all recommendations, were each reasonably related to the conditions that led to the removal of the children and were aimed at reunification. "[A]ll of these requirements assist [Respondent] in both understanding and resolving the possible underlying causes of [his] domestic violence issues." In re A.R. , 227 N.C. App. 518, 522, 742 S.E.2d 629, 632-33 (2013).
The trial court's findings of fact demonstrate that the children were removed from Respondent's care in November 2015, and Respondent failed to address any elements of his case plan until at least September 2017. It is apparent any efforts made by Respondent to comply with his case plan occurred well after the termination petition was filed. Thus, the trial court was free to conclude, as it did, that any progress by Respondent was too little, too late, and did not constitute reasonable progress. See In re B.S.D.S. , 163 N.C. App. 540, 545, 594 S.E.2d 89, 93 (2004) ("Extremely limited progress is not reasonable progress. This standard operates as a safeguard for children. If parents were not required to show both positive efforts and positive results, a parent could forestall termination proceedings indefinitely by making sporadic efforts for that purpose." (citation and quotations omitted)). Accordingly, we conclude the trial court properly determined that Respondent willfully failed to make reasonable progress in correcting the conditions that led to the removal of the children. Accordingly, we hold the trial court did not err in concluding that grounds existed to terminate Respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2).
The trial court's conclusion that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) is sufficient in and of itself to support termination of Respondent's parental rights. Taylor , 97 N.C. App. at 64, 387 S.E.2d at 233-34. Furthermore, the trial court made appropriate findings in determining that termination of Respondent's parental rights was in the children's best interests. See N.C. Gen. Stat. § 7B-1110(a) (2017). Accordingly, we affirm the trial court's order terminating Respondent's parental rights.
AFFIRMED.
Report per Rule 30(e).
Judge HUNTER, JR. concurs.
Judge MURPHY concurs in result only with separate opinion.
MURPHY, Judge, concurring in result only.
I concur with the Majority's result, but would affirm the trial court's order on a different ground and not reach the ground addressed by the Majority.
Any valid ground is independently sufficient to support an order terminating one's parental rights. In re Taylor , 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). Here, the trial court correctly concluded that a valid ground existed to terminate Respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(3). It is apparent from the record and findings of fact that Respondent had "willfully failed ... to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so." N.C. Gen. Stat. § 7B-1111(a)(3) (2017). Respondent was steadily employed, but paid nothing toward his child support order during the "period of six months next preceding the filing of the petition ...." N.C. Gen. Stat. § 7B-1111(a)(3). Respondent's failure to do so is an independent and sufficient ground to terminate his parental rights. N.C. Gen. Stat. § 7B-1111(a)(3) ; Taylor , 97 N.C. App. at 64, 387 S.E.2d at 233-34. I would affirm the trial court's order pursuant to N.C. Gen. Stat. § 7B-1111(a)(3) and respectfully concur in result only.

Pseudonyms are used to protect the identities of the juveniles and for ease of reading. See N.C.R. App. P. 3.1(b).

Mother does not appeal the trial court's orders and is not a party to this appeal.