IN THE MATTER OF A.R. & F.R.

No. COA12-1554

Filed 4 June 2013

1. **Child Abuse, Dependency, and Neglect—findings of fact— conclusions of law—neglect**

The trial court did not err in a child abuse and neglect case by making three findings of fact and a conclusion of law that the children were neglected. The unchallenged binding findings of fact alone supported the conclusion of law of neglect.

2. **Child Abuse, Neglect, and Dependency—dispositional order— best interests of child—conditions leading to removal**

The trial court did not abuse its discretion in a child abuse and neglect case in its dispositional order. It was not in the best interests of the children to return home. Further, requiring respondents to receive and comply with recommendations of mental health assessments, medical professionals supplying prescription medications, substance abuse evaluations, and drug screens was reasonably related to aiding respondents in remedying the conditions which led to the children's removal.

3. **Child Abuse, Neglect, and Dependency—Indian Child Welfare Act—notification requirements**

A child abuse and neglect case was remanded for the trial court to determine the results of the Wake County Human Services investigation as to the applicability of the Indian Child Welfare Act (ICWA) and to ensure that the ICWA notification requirements, if any, were addressed.

**IN RE A.R.**

[227 N.C. App. 518 (2013)]

Appeal by respondents from adjudication order filed 13 September 2012 and dispositional order filed 27 September 2012 by Judge Monica M. Bousman in District Court, Wake County. Heard in the Court of Appeals 13 May 2013.

*Wake County Attorney's Office by Deputy County Attorney Roger A. Askew, for petitioner- appellee.*

*Mellonee Kennedy, for guardian ad litem.*

*Mark Hayes, for respondent-mother-appellant.*

*Robert W. Ewing, for respondent-father-appellant.*

STROUD, Judge.

Respondents appeal adjudication and dispositional orders. For the following reasons, we affirm.

## I. Background

On 14 June 2012, Wake County Human Services ("WCHS") filed a petition alleging that respondents' sons, Frank and Aaron,[1] (collectively referred to as "the children") were abused and neglected juveniles. On 13 September 2012, the trial court filed an adjudication order concluding that both the children were neglected and Aaron was abused. On 27 September 2012, the trial court filed a dispositional order concluding that it was not in the best interests of the children to return to their parents' home. Respondents appealed.

## II. Adjudication Order

[1] Respondent-mother challenges three findings of fact or portions thereof as unsupported by the evidence and the trial court's conclusion of law that the children were neglected as unsupported by the findings of fact.

> The role of this Court in reviewing a trial court's adjudication of neglect and abuse is to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact. If such evidence exists, the

---

1. Pseudonyms will be used to protect the identity of the minors involved.

findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary.

*In re T.H.T.*, 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (citations, quotation marks, and brackets omitted), *modified and aff'd*, 362 N.C. 446, 665 S.E.2d 54 (2008). Findings of fact are also binding if they are not challenged on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

The unchallenged findings of fact establish that respondents' family members have reported that over the course of two years that respondents have engaged in "multiple incidents of domestic violence[,]" including an altercation on 6 June 2012, where Frank was present and during which respondent-mother tried to hit respondent-father with a board, missed, and instead hit Aaron in the head; Aaron was two months old at the time. Aaron "sustained a bruise and cut on the right side of his head just above and outside his right eye." Respondents did not seek medical treatment for Aaron. Respondent-mother informed a social worker that Aaron also has other serious health issues including cysts on his only kidney and an enlarged bladder. "The pediatrician's office was contacted and expressed concern" because respondents cancelled two medical appointments within a period of two months despite the difficulties in rescheduling Aaron's "specialized testing[.]" These unchallenged, binding findings of fact alone support the conclusion of law of neglect. *See* N.C. Gen. Stat. § 7B-101(15) (2011) ("A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home."). This argument is overruled.

### III. Dispositional Order

[2] Respondents challenge the trial court's dispositional order. We review a trial court's dispositional order for abuse of discretion. *In re Pittman*, 149 N.C. App. 756, 766, 561 S.E.2d 560, 567, *disc. review denied*, 356 N.C. 163, 568 S.E.2d 608, *appeal dismissed*, 356 N.C. 163, 568 S.E.2d 609 (2002). "A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that

it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

## A. Best Interests

Respondents contend that the trial court erred in ordering it was in the children's best interests for them to be placed outside the home. The trial court incorporated the WCHS Court Summary into its dispositional order and found that "[t]his Court has considered the evidence in the afore described Court Summary . . . and finds credible and factually sufficient evidence to support the disposition herein." As the Court Summary contained the facts as noted above regarding the incident in which Aaron was hit with a board by respondent-mother, and respondents' decision to not seek appropriate medical treatment for either the injury or Aaron's other medical conditions, we conclude that the trial court did not abuse its discretion in concluding that it was not in the best interests of the children to return home. *See id.*

## B. Conditions on Respondents

Respondents argue that the trial court erred by requiring them "to comply with a number of conditions which had nothing to do with the conditions which led to the children's removal" from the home including: (1) following recommendations of mental health assessments and taking prescribed medications; (2) completing a substance abuse evaluation, submitting to random drug screens, and complying with any recommendations; (3) providing copies of any lease or deed of any new residence; (4) providing documentation of employment or income; (5) maintaining contact with WCHS and notifying the social worker of any change of circumstances within five days of any change; and (6) following the recommendations of a "CME" (child medical evaluation) completed on 3 July 2012. (Original in all caps.) Respondent-father goes so far as to contend that the trial court did not have jurisdiction for the conditions it imposed.

North Carolina General Statute § 7B-904 provides that

> (c) At the dispositional hearing or a subsequent hearing the court may determine whether the best interests of the juvenile require that the parent . . . entrusted with the juvenile's care undergo psychiatric, psychological, or other treatment or counseling directed toward remediating or remedying behaviors or conditions that led to or contributed to the juvenile's adjudication or to the court's decision to remove custody of the juvenile from

**IN RE A.R.**

[227 N.C. App. 518 (2013)]

the parent . . . entrusted with the juvenile's care. If the court finds that the best interests of the juvenile require the parent . . . entrusted with the juvenile's care undergo treatment, it may order that individual to comply with a plan of treatment approved by the court or condition legal custody or physical placement of the juvenile with the parent . . . entrusted with the juvenile's care upon that individual's compliance with the plan of treatment. . . .

. . . .

(d1) At the dispositional hearing or a subsequent hearing, the court may order the parent . . . served with a copy of the summons pursuant to G.S. 7B-407 to do any of the following:

. . . .

(3) Take appropriate steps to remedy conditions in the home that led to or contributed to the juvenile's adjudication or to the court's decision to remove custody of the juvenile from the parent[.]

N.C. Gen. Stat. § 7B-904(c), (d1)(3) (2011).

The children here were initially removed primarily for respondents' issues with domestic violence. Requiring respondent-mother and/or respondent-father to receive and comply with recommendations of mental health assessments, medical professionals supplying prescription medications, substance abuse evaluations, and drug screens is reasonably related to aiding respondents in remedying the conditions which led to the children's removal; all of these requirements assist respondents' in both understanding and resolving the possible underlying causes of respondents' domestic violence issues. Providing copies of deeds or leases, of employment or income, and notifying WCHS of any changes in circumstances is also a reasonable requirement upon respondents as it is a manner in which both WCHS can stay in contact with respondents and ensure that they are making progress toward having their children returned home.[2] Lastly, following the then pending recommendations of

---

2. Though respondents cite *In re W.V.*, 204 N.C. App. 290, 693 S.E.2d 383 (2010), for the proposition that it is unreasonable to inquire about their employment as it is not reasonably related to the reason the children were removed from their home, we note that this case is distinguishable because in *In re W.V.*, the respondent was required "to obtain and maintain stable employment[,]" whereas here respondents have merely been asked to provide documentation of employment or income they may obtain or receive. *Id.* at 297, 693 S.E.2d at 387.

the CME conducted by Safe Child is certainly reasonably related to why the children were removed. This argument is overruled.

## IV. Indian Child Welfare Act

[3] Lastly, respondents contend that the trial court erred by failing to comply with the notice requirements of the Indian Child Welfare Act because the "children have an affiliation with a Native American group and that they are part Cherokee and part Black Foot." "The burden is on the party invoking the [Indian Child Welfare] Act to show that its provisions are applicable to the case at issue, through documentation or perhaps testimony from a tribe representative." *In re C.P.*, 181 N.C. App. 698, 701-02, 641 S.E.2d 13, 16 (2007). WCHS's Court Summary notes that "it was reported by the parents during the CPC that the children do have affiliation with a Native American group, per the parents report that they are part Cherokee and part Blackfoot." On 2 July 2012, the trial court filed an "ORDER ON NEED FOR CONTINUING NON-SECURE CUSTODY AND NOTICE OF NEXT HEARING" ("non-secure custody order") finding as fact "[t]hat the father believes there may be a family connection to a registered Native American group. WCHS will conduct the proper investigation." Although the trial court did not order WCHS to conduct an investigation or provide any particular notice, the non-secure custody order does indicate the need for further investigation. The mere belief by respondent-father as to "a family connection to a registered Native American group" would normally not meet the burden of triggering the ICWA notification, *see id.*, but in this case, based upon the evidence before it, the trial court specifically found as fact that WCHS should conduct an investigation.

> The Indian Child Welfare Act (the Act), passed by Congress in 1978, is intended to regulate placement and custody proceedings involving Indian children in order to strengthen and preserve Native American families and culture. In North Carolina, in order for the Act to apply, a proceeding must first be determined to be a child custody proceeding as defined by the Act itself, and it must then be determined that the child in question is an Indian child of a federally recognized tribe. The burden is on the party invoking the Act to show that its provisions are applicable to the case at issue, through documentation or perhaps testimony from a tribe representative.

> According to the Act,

> In any involuntary proceeding in a State court,
> where the court knows or has reason to know that
> an Indian child is involved, the party seeking the
> foster care placement of, or termination of paren-
> tal rights to, an Indian child shall notify the parent
> or Indian custodian and the Indian child's tribe,
> by registered mail with return receipt requested,
> of the pending proceedings and of their right of
> intervention. No foster care placement or termi-
> nation of parental rights proceeding shall be held
> until at least ten days after receipt of notice by
> the parent or Indian custodian and the tribe or
> the Secretary: Provided, That the parent or Indian
> custodian or the tribe shall, upon request, be
> granted up to twenty additional days to prepare
> for such proceeding.

> These requirements of notice and time for preparation
> allow an Indian tribe to intervene in a pending custody
> proceeding in order to provide for placement with an
> Indian family or guardian if possible.

> Additionally, an Indian child's tribe shall have a right
> to intervene at any point in the proceeding of any State
> court concerning the foster care placement of an Indian
> child. The Act further provides that, even after the con-
> clusion of the proceedings, the tribe may petition any
> court of competent jurisdiction to invalidate any action
> for foster care placement or termination of parental
> rights under State law upon a showing that such action
> violated the sections of the Act that outline the proper
> procedures to follow.

*Id.* at 701-02, 641 S.E.2d at 16 (citations, quotation marks, ellipses, and brackets omitted).

There is no dispute that this proceeding is an "involuntary proceed-ing in a State court[;]" the question is whether "the court knows or has reason to know that an Indian child is involved[.]" *Id.* Based upon the non-secure custody order, it appears that the trial court had at least some reason to suspect that an Indian child may be involved as the trial court specifically found that WCHS "will conduct the proper investigation." Though from the record before us we believe it unlikely that Frank and Aaron are subject to the ICWA, we prefer to err on the side of caution

IN RE E.H.

[227 N.C. App. 525 (2013)]

by remanding for the trial court to determine the results of the WCHS "investigation" and to ensure that the ICWA notification requirements, if any, are addressed as early as possible in this proceeding, to avoid any future delays in establishing a permanent home for Frank and Aaron which could result from a failure to comply with the IWCA, since failure to comply could later invalidate the court's actions. *See id.*

## V. Conclusion

For the foregoing reasons, we affirm in part and remand in part.

AFFIRMED IN PART and REMANDED IN PART.

Judges HUNTER, JR., Robert N. and DILLON concur.