TYSON, Judge.
 

 *541
 
 The Supreme Court of North Carolina remanded this case for this Court's review of the remaining issues raised by Respondent-mother's appeal.
 
 In re A.P.
 
 , --- N.C. ----,
 
 812 S.E.2d 840
 
 (2018). Respondent appeals from an order adjudicating her minor daughter, A.P., to be a neglected and dependent juvenile. The Supreme Court of North Carolina held the Mecklenburg County Youth and Family Services ("YFS") had standing to file the juvenile petition. We remand for the trial court to determine and ensure that the federal Indian Child Welfare Act ("ICWA") notification requirements are met.
 
 25 U.S.C. § 1912
 
 (a) (2012) ;
 
 25 C.F.R. § 23.107
 
 (b)(2) (2018).
 

 I. Background
 

 A.P. was born in August 2015, while Respondent was living at the Church of God Children's Home (the "Home"), located in Cabarrus County. Shortly after A.P.'s birth, Respondent began to display irrational behaviors. Respondent was subsequently involuntarily committed for mental health treatment in Mecklenburg County. Respondent agreed to a safety plan with the Cabarrus County Department of Social Services ("CCDSS") to allow A.P. to live at the Rowan County home of an employee ("Ms. B.") of the Home, while Respondent was undergoing in-patient mental health treatment.
 

 Later, Respondent identified her grandfather's home in Mecklenburg County as a place where she could live with A.P. upon her release from in-patient mental health treatment. CCDSS asked YFS to investigate the grandfather's home for appropriateness for A.P. YFS found her grandfather's home to be appropriate, and Respondent moved into the home with A.P. Respondent entered into an agreement with CCDSS that she would cooperate with YFS in developing and following an in-home family services plan, and
 
 *398
 
 CCDSS transferred the social services case to YFS.
 

 On 25 November 2015, Respondent's sister discovered Respondent and A.P. were living away from the grandfather's home in a dilapidated house in Mecklenburg County. Respondent's sister took A.P. to Ms. B., and YFS subsequently approved the placement of A.P. with Ms. B. in Rowan County. YFS determined Respondent needed substance abuse
 
 *542
 
 treatment and other services. Respondent initially engaged in services that were performed in Mecklenburg County.
 

 At an 18 December 2015 meeting with YFS, Respondent agreed that A.P. would continue to stay with Ms. B., while she lived with a family friend in South Carolina. Respondent returned to Mecklenburg County in January 2016. She was subsequently jailed on unidentified criminal charges. From 18 to 20 February 2016, Respondent was again an inpatient at Davidson Mental Health Hospital in Mecklenburg County.
 

 On 22 March 2016, Respondent informed YFS that she was now residing in Cabarrus County. On 23 March 2016, Ms. B., A.P.'s caretaker, informed YFS that she could no longer care for A.P. On 29 March 2016, YFS retrieved the child from Ms. B. and obtained a nonsecure custody order from a Mecklenburg County magistrate. On 30 March 2017, YFS filed the nonsecure custody order and a juvenile petition alleging A.P. was a neglected and dependent juvenile.
 

 After an adjudication and disposition hearing, the trial court concluded A.P. was a neglected and dependent juvenile. The court continued custody of A.P. with YFS, with placement in YFS's discretion. The court ordered Respondent to have supervised visitation with A.P., for Respondent to enter into an out-of-home family services agreement with YFS and, to comply with the terms of the agreement. Respondent filed timely notice of appeal.
 

 In the earlier review of
 
 In re A.P.
 
 , --- N.C. App. ----,
 
 800 S.E.2d 77
 
 , this Court unanimously held YFS lacked standing to file the juvenile petition and vacated the trial court's order.
 
 In re A.P.,
 
 at ----,
 
 800 S.E.2d at 82
 
 . The Supreme Court determined that "the legislature did not intend to limit the class of parties who may invoke the court's subject matter jurisdiction in juvenile adjudication actions to only directors of county departments of social services in the county where the juvenile at issue resides or is found[,]" and remanded to this Court.
 
 In re A.P.
 
 , --- N.C. at ----,
 
 812 S.E.2d at 844
 
 .
 

 II. Indian Child Welfare Act
 

 Respondent-mother argues the adjudication hearing should have been continued for further investigation into the applicability of ICWA to this petition. We agree.
 

 The ICWA was enacted by Congress in 1978 to establish the "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes" in order to "protect the best interests of Indian children and to promote
 
 *543
 
 the stability and security of Indian tribes and families."
 
 25 U.S.C. § 1902
 
 (2012). In relevant part ICWA states:
 

 In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. ... No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary:
 
 Provided
 
 , That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding.
 

 25 U.S.C. § 1912
 
 (a).
 

 An "Indian child" is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."
 
 25 U.S.C. § 1903
 
 (4) (2012). ICWA's notice requirement is mandatory and triggered when the proceeding is a
 
 *399
 
 "child custody proceeding," and the child involved is determined to be an "Indian child" of a federally recognized tribe.
 
 In re A.D.L.
 
 ,
 
 169 N.C. App. 701
 
 , 708,
 
 612 S.E.2d 639
 
 , 644 (2005).
 

 At the time the nonsecure custody order was obtained and at A.P.'s adjudication as neglected, this Court had stated "[t]he burden [was] on the party invoking [ICWA] to show that its provisions are applicable to the case at issue, through documentation or perhaps testimony from a tribe representative."
 
 In re C.P.
 
 ,
 
 181 N.C. App. 698
 
 , 701-02,
 
 641 S.E.2d 13
 
 , 16 (2007) (citing
 
 In re Williams
 
 ,
 
 149 N.C. App. 951
 
 , 957,
 
 563 S.E.2d 202
 
 , 205 (2002) ).
 

 Under current federal regulations effective 12 December 2016, the burden rests upon the state courts to confirm that active efforts have been made to prevent the breakup of Indian families and those active efforts must be documented in detail in the record.
 
 In re L.W.S.
 
 , --- N.C. App. ----, ----,
 
 804 S.E.2d 816
 
 , 819, nn. 3-4 (2017) ;
 
 25 C.F.R. § 23.107
 
 (a), (b)(1)-(2) (2018).
 

 Whether the evidence presented at the adjudication hearing should have caused the trial court to have reason to know an "Indian child" may
 
 *544
 
 be involved and trigger the notice requirement is the issue before us. The federal regulations implementing ICWA and promulgated in 2016, clearly the states court has reason to know an "Indian child" is involved if: "Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child."
 
 25 C.F.R. § 23.107
 
 (c)(2) (2018).
 

 The ICWA proscribes that once the court has reason to know the child could be an "Indian child," but does not have conclusive evidence, the court should confirm and "work with all of the Tribes ... to verify whether the child is in fact a member."
 
 25 C.F.R. § 23.107
 
 (b)(1). Federal law provides: "No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary[.]"
 
 25 U.S.C. § 1912
 
 (a). Further, a court must "[t]reat the child as an Indian child, unless and until it is determined on the record that the child does not meet the definition of an 'Indian child.' "
 
 25 C.F.R. § 23.107
 
 (b)(2).
 

 Other jurisdictions have recognized that "Indian child" status of the juvenile can only be decided by the tribe itself; therefore, only a suggestion that the child may be of Indian heritage is enough to invoke the notice requirements of the ICWA.
 
 In re Antoinette S.
 
 ,
 
 104 Cal. App. 4th 1401
 
 , 1408,
 
 129 Cal.Rptr.2d 15
 
 , 21 (2002). Additionally, ICWA provides that even after the completion of custody proceedings, if the provisions of ICWA were violated, "any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action."
 
 25 U.S.C. § 1914
 
 (2012).
 

 In
 
 In re A.R.
 
 , the Respondent-father claimed that he had "a family connection to a registered Native American group" which consequently qualified his children for the protections under ICWA.
 
 In re A.R.
 
 ,
 
 227 N.C. App. 518
 
 , 523,
 
 742 S.E.2d 629
 
 , 633 (2013). No further evidence on the Indian heritage of the juveniles was presented and the trial court continued the proceedings without ordering any ICWA notification.
 

 Id.
 

 The court then issued an adjudication and disposition order concluding the children were neglected and abused.
 
 Id.
 
 at 519,
 
 742 S.E.2d at 631
 
 .
 

 On appeal, this Court recognized that "it appears that the trial court had at least some reason to suspect that an Indian child may be involved"
 
 Id.
 
 at 524,
 
 742 S.E.2d at 634
 
 . Further, this Court held that "[t]hough from the record before us we believe it unlikely that [the juveniles] are subject to the ICWA, we prefer to err on the side of caution by remanding
 
 *545
 
 for the trial court to ... ensure that the ICWA notification requirements, if any, are addressed ... since failure to comply could later invalidate the court's actions."
 

 Id.
 

 In the case of
 
 In re C.P.,
 
 the respondent-mother made the bare assertion that she and her children could possibly be eligible for membership with a band of Potawatomi Indians.
 
 In re C.P.
 
 ,
 
 181 N.C. App. at 702
 
 ,
 
 641 S.E.2d at 16
 
 . The trial court required the
 
 *400
 
 ICWA notice to be sent.
 

 Id.
 

 When the time required under ICWA had passed without response from the tribe, the trial court allowed two continuances before determining ICWA did not apply and resumed the proceedings.
 
 Id.
 
 at 703,
 
 641 S.E.2d at 16-17
 
 .
 

 On appeal, the respondent asserted error in the trial court's refusal to continue the proceedings until the tribe responded.
 
 Id.
 
 at 701,
 
 641 S.E.2d at 15-16
 
 . This Court held the trial court had complied with ICWA where the length of time of the continuance following the notification letter exceeded ICWA requirements and the respondent had offered no additional evidence to sustain her burden of showing the ICWA further applied.
 
 Id.
 
 at 703,
 
 641 S.E.2d at 17
 
 .
 

 Our Court has required social service agencies to send notice to the claimed tribes rather than risk the trial court's orders being voided in the future, when claims of Indian heritage arise, even where it may be unlikely the juvenile is an Indian child.
 
 See
 

 In re A.R.
 
 ,
 
 227 N.C. App. at 524
 
 ,
 
 742 S.E.2d at
 
 634 ;
 
 In re C.P.
 
 ,
 
 181 N.C. App. at 702
 
 ,
 
 641 S.E.2d at 16
 
 .
 

 On 5 April 2016, the seven-day nonsecure custody hearing was held before the trial court. The court's order contains a finding of fact that ICWA was inapplicable. However, evidence concerning A.P., and admitted at the adjudication hearing by YFS, included a 2015 CCDSS form indicating A.P. and her mother have "American Indian Heritage" within the "Cherokee" and "Bear foot" tribes.
 

 After the CCDSS form was provided to Respondent's counsel at trial, counsel brought to the trial court's attention that Respondent and A.P. were of a federally-recognized Indian tribe and YFS did not provide that tribe any notice. The trial court indicated it had specifically made inquiry at the seven-day hearing of whether ICWA applied and determined the Act did not. There is no transcript in the record from the nonsecure custody hearing. The trial court's order notes Respondent-mother arrived late for the hearing and no one from CCDSS was listed as being present. Nothing in the record shows either CCDSS or YFS complied with the notice provisions of ICWA.
 

 *546
 
 The record indicating Respondent-mother's potential "Cherokee" and "Bear foot" Indian heritage was sufficient to put the trial court on notice and provided "reason to know that an 'Indian child' is involved."
 
 25 U.S.C. § 1912
 
 (a).
 
 See
 

 In re A.R.
 
 ,
 
 227 N.C. App. at 524
 
 ,
 
 742 S.E.2d at
 
 634 ;
 
 In re C.P.
 
 ,
 
 181 N.C. App. at 702
 
 ,
 
 641 S.E.2d at 16
 
 .
 

 Once this record was brought to the court's attention, the trial court must direct YFS to send a conforming notification letter to the tribe(s). "[T]he question of the district court's jurisdiction under the ICWA cannot be resolved based on the evidence of record, we must remand the cause for a determination of subject matter jurisdiction."
 
 In re E.G.M.
 
 ,
 
 230 N.C. App. 196
 
 , 204,
 
 750 S.E.2d 857
 
 , 862 (2013) (citation omitted).
 

 We remand to the trial court to issue an order requiring notice to be sent by YFS as required by
 
 25 U.S.C. § 1912
 
 (a), and which complies with the standards outlined in
 
 25 C.F.R. § 23.111
 
 (2018). If no response to this notification is received, the Respondent-mother must meet her burden to produce evidence to sustain ICWA's application in this case.
 
 See
 

 In re C.P.
 
 ,
 
 181 N.C. App. at 701-02
 
 ,
 
 641 S.E.2d at 16
 
 (citation omitted). If a response or other evidence is received confirming A.P. qualifies as an "Indian child," the trial court shall comply with the corresponding provisions in ICWA and with the wishes of that tribe.
 

 "In the event that the trial court concludes on remand that it lacks subject matter jurisdiction ..., then it will be required to dismiss the petition ...."
 
 In re M.G.,
 

 187 N.C. App. 536
 
 , 548 n. 5,
 
 653 S.E.2d 581
 
 , 588 n. 5 (2007),
 
 rev'd on other grounds,
 

 363 N.C. 570
 
 ,
 
 681 S.E.2d 290
 
 (2009).
 

 III. Conclusion
 

 This case is remanded to the district court for further proceedings. The trial court shall insure the ICWA's notice and other mandatory requirements are met. YFS is to notify "by registered mail with return receipt requested" to Respondent-mother and child's potential tribe(s). No further "proceeding shall be held until at least ten days after receipt of notice by the parent or Indian
 
 *401
 
 custodian and the tribe or the Secretary;
 
 Provided
 
 , that the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding."
 
 25 U.S.C. § 1912
 
 (a). Respondent-mother's remaining challenges are preserved pending the outcome on remand.
 
 It is so ordered.
 

 REMANDED.
 

 Judges BRYANT and DAVIS concur.