IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-424

Filed: 17 March 2020

Wilkes County, Nos. 17 JA 132

IN THE MATTER OF: K.G.

Appeal by Respondent-Mother from order entered 14 February 2019 by Judge David V. Byrd in Wilkes County District Court. Heard in the Court of Appeals 19 February 2020.

*Erika Hamby for petitioner-appellee Wilkes County Department of Social Services.*

*Steven S. Nelson for respondent-appellant mother.*

*Nelson Mullins Riley & Scarborough LLP, by Carrie A. Hanger, for guardian ad litem.*

MURPHY, Judge.

"The Congress shall have Power . . . To regulate Commerce . . . with the Indian Tribes[.]" U.S. Const. art. I, § 8, cl. 3. "[T]hrough this [clause] and other constitutional authority, Congress has plenary power over Indian affairs[.]" 25 U.S.C. § 1901(1) (1978). In recognition of that power—and in response to the "wholesale removal of Indian children from their homes"—Congress passed the Indian Child Welfare Act ("ICWA"), "which establishes federal standards that govern state-court child custody proceedings involving Indian children." *Adoptive Couple v. Baby Girl*, 570 U.S. 637, 642, 186 L. Ed. 2d 729, 736 (2013).

Although the parties to this appeal present arguments on a number of issues, our analysis of this case need not go beyond the first issue presented: whether the trial court erred in concluding ICWA did not apply to its *Permanency Planning Order* entered 14 February 2019. We hold the trial court erred because "the question of [its] jurisdiction under . . . ICWA cannot be resolved based on the evidence [in the] record." *In re: A.P.*, 818 S.E.2d 396, 400 (N.C. Ct. App. 2018) (internal quotation marks and citation omitted). We remand to confirm notice of these proceedings is provided to the relevant tribes and that the trial court has properly determined whether it has subject matter jurisdiction of this case.

Appellant argues the trial court failed to comply with ICWA's notice provisions because it did not ensure the record included "return receipts or other proof of actual delivery in the record to confirm delivery of the notices in compliance with 25 C.F.R. [§] 23[-]111." This provision, 25 C.F.R. § 23-111(a), is nearly identical to 25 U.S.C. § 1912(a); both describe the measures a state court must take to notice federally recognized tribes of involuntary proceedings that may involve an "Indian child," as that term is defined under 25 U.S.C.§ 1903(4) (2018).[1] Under ICWA:

> In any involuntary proceeding in a State court, where the court knows *or has reason to know* that an Indian child is involved, the party seeking the foster care placement of, or

---

[1] An "Indian child" is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C.§ 1903(4) (2018). The determination of whether a child is an Indian child "*is solely within the jurisdiction and authority of the Tribe . . . .*" 25 C.F.R. § 23.108(b) (2016) (emphasis added).

termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary . . . .

25 U.S.C. § 1912(a) (2018).

We interpreted ICWA's notice requirement as it is set out in the current federal guidelines most recently in *A.P.*, 818 S.E.2d at 400.[2]  As is the case here, in *A.P.* the issue before us was, "[w]hether the evidence presented [to the trial court] should have caused [it] to have reason to know an 'Indian child' may be involved and trigger the notice requirement . . . ." *Id.* at 399.  In *A.P.*, we reasoned ICWA:

> proscribes that once the court has reason to know the child could be an "Indian child," but does not have conclusive evidence, the court should confirm and "work with all of the Tribes . . . to verify whether the child is in fact a member." 25 C.F.R. § 23.107(b)(1).  Federal law provides: "No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary[.]" 25 U.S.C. § 1912(a).  Further, a court must "[t]reat the child as an Indian child, unless and until

---

[2] *See* 25 C.F.R. § 23.111 (2016) (effective 12 Dec. 2016); *In re L.W.S.*, 255 N.C. App 296, 298, 804 S.E.2d 816, 818-19, n. 3-4 (2017).

it is determined on the record that the child does not meet the definition of an 'Indian child.'" 25 C.F.R. § 23.107(b)(2).

*Id.* We held a trial court has "reason to know the child could be an 'Indian child,'" in instances where "it appears that the trial court had at least some reason to suspect that an Indian child may be involved." *Id.* (*quoting In re A.R.*, 227 N.C. App. 518, 523, 742 S.E.2d 629, 633 (2013)).

In *A.P.*, we also cited with approval our reasoning from *A.R.* that, "[t]hough from the record before us we believe it unlikely that [the juveniles] are subject to the ICWA, we prefer to err on the side of caution by remanding for the trial court to . . . ensure that the ICWA notification requirements, if any, are addressed . . . since failure to comply could later invalidate the court's actions." *A.R.*, 227 N.C. App. at 524, 742 S.E.2d at 634; *see also A.P.*, 818 S.E.2d at 399. We find this approach is consistent with ICWA's overall purpose of protecting "the best interests of Indian children and [promoting] the stability and security of Indian tribes and families[.]" 25 U.S.C. § 1902 (2018). Likewise, such a cautious approach is consistent with the federal guidelines promulgated with the latest major reworking of ICWA, which provides an example of a situation where a state court would be warranted in ceasing to treat a child as an "Indian child":

> If a Tribe fails to respond to multiple repeated requests for verification regarding whether a child is in fact a citizen (or a biological parent is a citizen and the child is eligible for citizenship), and the agency has repeatedly sought the assistance of BIA in contacting the Tribe, a court may make

a determination regarding whether the child is an Indian
child . . . based on the information it has available.

U.S. DEPT. OF THE INTERIOR, BUREAU OF INDIAN AFFAIRS, RIN 1076-AF25, Indian Child Welfare Act Proceedings 109 (2016), https://www.bia.gov/sites/bia.gov/files/assets/bia/ois/pdf/idc1-034238.pdf (hereinafter Indian Child Welfare Act Proceedings).

Here, the record shows the trial court had reason to know an "Indian child" may be involved. In its *Order on Need for Continued Nonsecure Custody*, entered 14 August 2017, the trial court noted "The mother indicates that she is of Cherokee ancestry, but did not know a specific tribe. The Department is sending notice to both the Eastern Band Cherokee as well as Cherokee Nation." Although it had reason to know an "Indian child" may be involved in these proceedings, the trial court did not ensure that the Cherokee Nation or the Eastern Band of Cherokee Indians were actually notified.

For example, there is no evidence of multiple repeated requests for verification to the relevant tribes, or that the agency sought the assistance of the Bureau of Indian Affairs ("BIA") in contacting the Tribes. In fact, the record shows DSS sent notice to the Cherokee Nation and Eastern Band of Cherokee Indians, but does not indicate DSS or the trial court ever received confirmation that either Tribe even received the notice, or that DSS sent any additional notices to the Tribes or the BIA. This is, as Appellant notes, inconsistent with ICWA's mandate that trial courts ensure that "[a]n

original or a copy of each notice sent . . . is filed with the court *together with any return receipts or other proof of service.*" 25 C.F.R. § 23.111(a)(2) (2016) (emphasis added).

"[T]he question of [the trial] court's jurisdiction under . . . ICWA cannot be resolved based on the evidence [in the] record." *A.P.*, 818 S.E.2d at 400 (internal quotation marks and citation omitted). The record does not indicate the trial court ensured ICWA's notification requirements were complied with. For instance, the record does not show "a Tribe fail[ed] to respond to multiple repeated requests for verification regarding whether a child is in fact a citizen (or a biological parent is a citizen and the child is eligible for citizenship), [or] the agency ha[d] repeatedly sought the assistance of BIA in contacting the Tribe[s] . . . ." Indian Child Welfare Act Proceedings 109. "We remand to the trial court to issue an order requiring notice to be sent . . . as required by 25 U.S.C. § 1912(a), and which complies with the standards outlined in 25 C.F.R. § 23.111 . . . ." *Id.*

REMANDED.

Judges DIETZ and COLLINS concur.