An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1178

Filed 17 June 2026

Carteret County, Nos. 23JT000007-150, 23JT000008-150

IN THE MATTERS OF: C.R.F. AND C.A.F.

Appeal by Respondent-Mother from Order entered 16 July 2025 by Judge L. Walter Mills in Carteret County District Court. Heard in the Court of Appeals 2 June 2026.

*Jack T. Brock, II, for Respondent-Appellant Mother.*

*Kathleen Zbytniuk for Petitioner-Appellee Carteret County Department of Social Services.*

*Alston & Bird LLP, by Kelsey L. Kingsbery and Nicholas A. Young, for Guardian ad litem.*

HAMPSON, Judge.

**Factual and Procedural Background**

Respondent-Mother appeals from an Order terminating her parental rights in Curt and Cindy.[1] The Record before us tends to reflect the following:

On 31 January 2023, Carteret County Department of Social Services (DSS) filed petitions alleging Curt and Cindy were neglected and dependent juveniles. An Affidavit as to the Status of the Minor Child was attached to each petition. The petitions alleged the juveniles were exposed to ongoing domestic violence between their parents, the parents failed to address Curt's mental and behavioral health needs, Father[2] engaged in "inappropriate" discipline which was sometimes violent, and Respondent-Mother failed to protect the juveniles from Father. Additionally, the petition alleged the parents previously used marijuana around the children and Father was still using marijuana; Father had untreated mental health issues which impeded both parents' ability to provide proper care for the juveniles; and both parents failed to engage in sustained, continued treatment and services recommended by DSS after they had become involved with the family the year prior.

The trial court entered nonsecure custody orders granting DSS temporary custody of the juveniles that same day. In the orders, the trial court found DSS did

---

[1] Pseudonyms agreed upon by the parties.

[2] Father passed away on 29 June 2025, after the Termination Hearing but prior to the entry of the trial court's Order. Accordingly, the trial court abated the proceedings as to Father, and he is not party to this appeal.

not know whether the juveniles were Indian children for the purposes of the Indian Child Welfare Act (ICWA).[3]

At the first hearing on the need for continued nonsecure custody, the trial court found the juveniles were not members of a State-recognized tribe and, based on "an inquiry of each participant," no party knew whether the juveniles were Indian children. The trial court found the same in subsequent orders on the need for continued nonsecure custody entered 2 March 2023, 30 March 2023, and 21 April 2023. Similarly, in the pre-trial adjudication order, the trial court concluded ICWA did not apply.

In the Guardian ad litem (GAL) reports prepared 28 April 2023, 30 July 2023, 1 December 2023, and 22 May 2024, the children's GAL noted there were no identified tribal, cultural, religious, or other diversity needs or considerations for the juveniles. In DSS court reports prepared 31 March 2023, 24 July 2023, 1 December 2023, and 16 May 2024, DSS noted it had submitted paperwork to the Waccamaw Siouan Tribe[4] inquiring about the juveniles' enrollment eligibility; DSS reported the Tribe had informed it on 24 February 2023 that neither child was enrolled nor were they eligible for enrollment with the Tribe.

---

[3] The form of the order allows the trial court to select from three options, finding either that DSS (1) "does not know," (2) "knows," or (3) "has reason to know" whether the juvenile is an Indian child.

[4] A State-recognized tribe.

In the consent adjudication order entered 4 May 2023, the parties "agree[d] to be legally and mutually bound by" the following statement: "The juveniles are not members of any tribe; therefore, the [ICWA] does not apply to this case." Likewise, in the 12 May 2023 disposition order, the trial court found the parents had "not indicated registration or eligibility of registration with a Native American tribe." The trial court found the juveniles were not subject to ICWA. The same is true of the 21 August 2023 and 15 December 2023 permanency planning orders.

On 10 September 2024, DSS filed a Petition to terminate Respondent-Mother's and Father's parental rights. Prior to the Termination Hearing, Respondent-Mother filed a Motion to Dismiss asserting, in relevant part, the trial court lacked subject matter jurisdiction over the matter because DSS had failed to file affidavits as to the status of the minor children as set out in N.C. Gen. Stat. § 50A-209(a).

The Termination Hearing was held over four dates in March and May 2025. The nonsecure custody orders, consent adjudication order, disposition order, and 21 August 2023 and 12 December 2023 permanency planning orders were each entered into evidence at the Termination Hearing. The trial court did not ask the parties whether they knew or had reason to know the juveniles were Indian children.

On 16 July 2025, the trial court entered an Order concluding grounds existed to terminate Respondent-Mother's parental rights in the juveniles under N.C. Gen. Stat. § 7B-1111(a)(1), (a)(2), (a)(3), and (a)(6). In the Order, the trial court found there

were "no issues regarding . . . ICWA." Respondent-Mother timely filed Notice of Appeal on 25 July 2025.

## Issues

The issues on appeal are whether: (I) the trial court's failure to inquire of the parties under ICWA at the Termination Hearing was prejudicial error, (II) the trial court erroneously proceeded on the Termination Petition without affidavits as to the status of the minor children as required by N.C. Gen. Stat. § 50A-209, and (III) the trial court rendered its Order in a legally void proceeding.

## Analysis

I.    Compliance with ICWA

Respondent-Mother argues the trial court failed to comply with its statutory duties under ICWA. "The issue of whether a trial court complied with ICWA requirements is reviewed de novo." *In re L.Q.*, 298 N.C. App. 540, 546, 915 S.E.2d 255, 260 (2025) (citing *In re A.P.*, 260 N.C. App. 540, 542-46, 818 S.E.2d 396, 398-400 (2018)).

The North Carolina Supreme Court has recognized "for all child custody proceedings occurring after 12 December 2016, the ICWA imposes a duty on the trial court to 'ask each participant . . . whether the participant knows or has reason to know that the child is an Indian child.' " *In re A.L.*, 378 N.C. 396, 403, 862 S.E.2d 163, 168 (2021) (alteration in original) (quoting *In re M.L.B.*, 377 N.C. 335, 340, 857 S.E.2d 101, 104 (2021)). "The ICWA defines Indian child to only include those eligible

for membership in a tribe recognized for services by the Secretary of the Bureau of Indian Affairs of the United States."[5]  *Id.* (citing 25 U.S.C. § 1903(4), (8)).

"State courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child."  25 C.F.R. § 23.107(a).  The trial court has reason to know a child involved in a child-custody proceeding is an Indian child if:

> (1) Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that the child is an Indian child;
>
> (2) Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child;
>
> (3) The child who is the subject of the proceeding gives the court reason to know he or she is an Indian child;
>
> (4) The court is informed that the domicile or residence of the child, the child's parent, or the child's Indian custodian is on a reservation or in an Alaska Native village;
>
> (5) The court is informed that the child is or has been a ward of a Tribal court; or
>
> (6) The court is informed that either parent or the child possesses an identification card indicating membership in an Indian Tribe.

*Id.* § 23.107(c).

---

[5] In other words, the provisions of ICWA are triggered only if the juvenile is a member of a federally-recognized tribe, as opposed to a State-recognized tribe.  *See also In re E.J.B.*, 375 N.C. 95, 103 n.10, 846 S.E.2d 472, 477 n.10 (2020).

Respondent-Mother argues the Order must be vacated because the trial court did not ask "the participants on the record whether they knew or had reason to know whether the juveniles are Indian children at the commencement of the termination proceeding."

Our Supreme Court addressed a similar argument in *In re A.L.* There, although the trial court entered initial orders finding the juvenile to be a member of a State-recognized tribe, "the trial court did not address the [ICWA] in the Order on Adjudication, Order on Disposition, or the Order Terminating Respondent's Parental Rights." 378 N.C. at 400, 862 S.E.2d at 166. The respondent-mother argued the trial court failed to comply with its statutory duties under ICWA. *Id.* at 403, 862 S.E.2d at 168. DSS argued ICWA did not apply because it "addresses federally recognized tribes[,]" while the juvenile was only known to be a member of a State-recognized tribe. *Id.*

The Court explained:

> The ICWA imposes a duty on the trial court to inquire of participants as set forth in 25 C.F.R. § 23.107(a) in all child-custody cases, but whether the other provisions of the ICWA apply are triggered by whether the trial court has reason to know that the child is an Indian child as defined in the ICWA.

*Id.* (citing 25 C.F.R. § 23.107). The Court remanded the case to the trial court to determine whether there was reason to know the juvenile was an Indian child, as the Court could not make that determination on the record before it. *Id.* at 404, 862 S.E.2d at 168.

- 7 -

In the instant case, the Record shows the trial court made the requisite inquiry under 25 C.F.R. § 23.107 at the first hearing held after the entry of the nonsecure custody orders. However, despite finding there were no "issues regarding . . . ICWA[ ]" in the Termination Order, there is no evidence the trial court made the inquiry again at the Termination Hearing or in the pre-trial termination proceedings.[6] *See In re L.Q.*, 298 N.C. App. at 547, 915 S.E.2d at 261 (considering whether trial court made ICWA inquiry at the commencement of termination proceedings, notwithstanding undisputed evidence the inquiry had been made when the juvenile was adjudicated neglected); *In re C.C.G.*, 380 N.C. 23, 31, 868 S.E.2d 38, 44 (2022) (same).

Nonetheless, the trial court's failure to make this inquiry is only prejudicial if the trial court would have had reason to know the children were Indian children. *In re A.L.*, 378 N.C. at 403-04, 862 S.E.2d at 168. In *C.C.G.*, the Court determined the trial court did not have reason to know the juvenile was an Indian child, and thus did not commit reversible error in failing to make this inquiry at the termination hearing, notwithstanding evidence of a "possible distant Cherokee relation on her mother's side of the family" because nothing in the Record stated the juvenile was an Indian

---

[6] The transcript of the pre-trial proceedings is not included in the Record before us, but the trial court's pre-trial termination order is silent as to ICWA and whether any inquiry was made of the parties as to its applicability.

child or contained information she or her parents were members of an Indian tribe. 380 N.C. at 29, 868 S.E.2d at 43.

Here, as in *C.C.G*, there is nothing in the Record stating the juveniles are Indian children, nor is there any indication Respondent-Mother or Father are members or citizens of an Indian tribe. *See id.* In fact, the Record is replete with evidence tending to show neither the parties nor the trial court had reason to know or believe the juveniles are Indian children. Rather, the totality of the Record, including the orders on the need for continued nonsecure custody; the consent adjudication order, in which the parties agreed to be bound by a determination ICWA did not apply; the disposition order; the permanency planning orders; the GAL reports; and DSS court reports, tends to indicate the juveniles were not Indian children.

Thus, the Record shows the trial court did not have reason to know the juveniles were Indian children. Therefore, the trial court's alleged failure to make the requisite inquiry under 25 C.F.R. § 23.107 at the Termination Hearing was not prejudicial error. *In re A.L.*, 378 N.C. at 403-04, 862 S.E.2d at 168; *In re C.C.G.*, 380 N.C. at 31, 868 S.E.2d at 44-45.

II.    Compliance with N.C. Gen. Stat. § 50A-209

Respondent-Mother also argues the trial court erred by proceeding on a termination petition that "failed to comply with the statutory requirement to include an affidavit of status of the minor children." She asserts that without such an

affidavit, the trial court did not have the information needed "to determine whether jurisdiction existed prior to rendering its decision in the termination matter[ ]" and prejudiced her ability to litigate "threshold statutory and jurisdictional issues[.]"

> In a child-custody proceeding, each party, in its first pleading or in an attached affidavit, shall give information, if reasonably ascertainable, under oath as to the child's present address or whereabouts, the places where the child has lived during the last five years, and the names and present addresses of the persons with whom the child has lived during that period.

N.C. Gen. Stat. § 50A-209(a) (2025). "The purpose of this affidavit is to assist the trial court in determining whether it can assume subject matter jurisdiction over the matter." *In re Clark*, 159 N.C. App. 75, 79, 582 S.E.2d 657, 660 (2003) (citing *Brewington v. Serrato*, 77 N.C. App. 726, 730, 336 S.E.2d 444, 447 (1985)).

In *In re Clark*, the respondent-mother argued the trial court did not have jurisdiction over the proceedings because DSS had failed to file an affidavit on the status of the minor child when it filed its petition to terminate the respondent-mother's parental rights. *Id.* at 79, 582 S.E.2d at 659-60. This Court disagreed, because "after the failure to comply with the statute was pointed out, the trial court gave DSS five days to comply, and DSS complied by filing the affidavit within five days." *Id.*

Here, and unlike *In re Clark*, the Record shows DSS filed affidavits as to the status of the minor children on 31 January 2023, together with its petitions for

nonsecure custody of the juveniles—the first pleadings in the present matter. Thus, DSS did not fail to comply with Section 50A-209.

Moreover, once the trial court entered the nonsecure custody orders and assumed jurisdiction over the matter, its jurisdiction was exclusive and continuous. N.C. Gen. Stat. § 50A-202 (2025); *id.* § 7B-201(a) (2025) ("When the court obtains jurisdiction over a juvenile, jurisdiction shall continue until terminated by order of the court, until the juvenile reaches the age of 18 years or is otherwise emancipated, or upon the juvenile's death, whichever occurs first."). Respondent-Mother has not alleged any applicable circumstances which would divest the trial court of jurisdiction over the juveniles in the present case. Nor has Respondent-Mother argued the contents of the affidavits of the status of the minor children which DSS filed with the nonsecure custody petitions fail to support a finding the trial court had jurisdiction over the juveniles. Therefore, to the extent Respondent-Mother contends the trial court did not have jurisdiction over the matter because of DSS' alleged failure to file the affidavits as to the status of the minor children, that assertion is also without merit. *In re Clark*, 159 N.C. App. at 79-80, 582 S.E.2d at 660.

III.    Validity of Proceedings

Lastly, Respondent-Mother argues the Order must be reversed because it was "inextricably intertwined" with an "invalid process replete with misapprehensions of law." Respondent-Mother cites *In re E.B.*, where our Supreme Court stated: "[F]acts inextricably intertwined with a legally void proceeding are necessarily insufficient to

prove grounds for termination by clear, cogent, and convincing evidence." 375 N.C. 310, 318, 847 S.E.2d 666, 672 (2020). In *E.B.*, the proceedings were "legally void" because the trial court "acted without subject matter jurisdiction during the permanency planning process," 375 N.C. at 317, 847 S.E.2d at 672, as DSS had never "fil[ed] a petition to adjudicate [the juvenile] an abused, neglected, or dependent child, or . . . fil[ed] a petition to terminate respondent's parental rights[,]" *id.* at 316, 847 S.E.2d at 671 (citations omitted). The Court noted "[a]lmost all of the trial court's findings of fact . . . directly relate[d] to the legally void permanency planning and review hearings[.]" *Id.* at 319, 847 S.E.2d at 673.

Here, Respondent-Mother asserts the termination proceedings were based on an "invalid process" because of: (1) the trial court's alleged failure to comply with ICWA and (2) DSS' alleged failure to comply with Section 50A-209. However, as explained above, the trial court's alleged failure to inquire of the parties under ICWA at the Termination Hearing was not reversible error, and DSS properly filed affidavits of the status of the minor children as required by Section 50A-209. Thus, this is not a case where the facts were "inextricably intertwined with a legally void proceeding[.]" *See id.* at 318, 847 S.E.2d at 672.

Moreover, although Respondent-Mother also briefly asserts the proceedings were invalid because the services DSS offered her did not appropriately address her barriers to reunification with the juveniles, she has not challenged any specific Findings in the Order or presented any authorities in support of her position. Thus,

the trial court's Findings are binding on appeal, *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citations omitted), and this argument is considered abandoned, *In re C.D.A.W.*, 175 N.C. App. 680, 688, 625 S.E.2d 139, 144 (2006) (holding an issue was abandoned where it was "void of any discernible argument or citation as authority for such a claim"). Further, Respondent-Mother has not challenged the trial court's Conclusions grounds existed to terminate her parental rights in the juveniles, nor its determination that termination was in the juveniles' best interests. Therefore, we affirm the trial court's Order.

## **Conclusion**

Accordingly, for the foregoing reasons, we affirm the trial court's Order terminating Respondent-Mother's parental rights in Curt and Cindy.


AFFIRMED.

Chief Judge DILLON and Judge ZACHARY concur.

Report per Rule 30(e).